OPINION *Page 2 
{¶ 1} On November 4, 2005, the Stark County Grand Jury indicted appellant, Travon Baker, on one count of trafficking cocaine in violation of R.C. 2925.03(A)(1), with a specification that the offense occurred in the vicinity of a juvenile. Said charge arose from an incident wherein appellant sold crack cocaine to a confidential informant at Little Aviators Field in Alliance, Ohio. Appellant was preparing to coach pee-wee football.
 {¶ 2} On December 15, 2005, appellant filed a motion to suppress evidence seized as a result of an illegal traffic stop. A hearing was held on February 28, 2006. By judgment entry filed March 2, 2006, the trial court denied the motion.
 {¶ 3} A jury trial commenced on March 2, 2006. The jury found appellant guilty as charged. By sentencing entry filed March 14, 2006, the trial court sentenced appellant to eight years in prison.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 5} "THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 II {¶ 6} "THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE."
 III {¶ 7} "THE TRIAL COURT ERRED IN REFUSING TO ALLOW THE USE OF A FELONY CONVICTION OF A WITNESS AS IMPEACHMENT EVIDENCE." *Page 3 
 IV {¶ 8} "THE APPELLANT WAS DEPRIVED OF DUE PROCESS BY THE MISCONDUCT OF THE PROSECUTOR."
 V {¶ 9} "THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT IN VIOLATION OF STATE V. FOSTER AND IN INCREASING THE PENALTY FROM THE ORIGINAL FOUR YEAR OFFER."
 I {¶ 10} Appellant claims his conviction was against the sufficiency and manifest weight of evidence. We disagree.
 {¶ 11} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks at paragraph two of the syllabus, following Jackson v.Virginia (1979), 443 U.S. 307. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin (1983), 20 Ohio App.3d 172, 175. See also, State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be *Page 4 
exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 12} Appellant was convicted of trafficking in cocaine in violation of R.C. 2925.03(A)(1) which states, "No person shall knowingly * * * [s]ell or offer to sell a controlled substance."
 {¶ 13} Appellant argues the state's evidence was insufficient because the confidential informant lacked credibility, the police officers did not witness the buy and drugs were not found in appellant's vehicle or on his person.
 {¶ 14} In his brief, appellant argues the confidential informant, Lucretia Williams, lacked credibility because she approached the Alliance Police Department and offered to work as a confidential informant to help her boyfriend who had gotten into "trouble." However, Ms. Williams did not testify, so we fail to see how her credibility can be attacked.
 {¶ 15} Alliance Police Department Lieutenant James Hilles explained the protocol for setting up a controlled drug buy with a confidential informant. The money to be used for the buy was photocopied and time-stamped (State's Exhibit 7). T. at 273-275. Ms. Williams was thoroughly searched, as was her vehicle, "for any contraband that she might have on her prior to the transaction." T. at 276. Ms. Williams was given the money and was equipped with a digital audio recorder and transmitter. Id. Thereafter, Ms. Williams called appellant to make final arrangements for the drug buy. T. at 281. Lieutenant Hilles overheard this conversation. T. at 282. Ms. Williams then entered her vehicle and Lieutenant Hilles had visual contact of Ms. Williams at all times as she *Page 5 
drove to the football field. T. at 284-285, 289. Surveillance officers videotaped the exchange (State's Exhibit 13). T. at 372-374, 388-389, 392-394, 397-399.
 {¶ 16} After the transaction, Ms. Williams was followed by Lieutenant Hilles to a golf course, where he recovered the crack cocaine and the digital recorder, and researched Ms. Williams and her vehicle. T. at 294. No money was found on Ms. Williams. T. at 296.
 {¶ 17} The police executed a traffic stop of appellant. T. at 297. The photocopied money was found on appellant. T. at 302. The audiotape (State's Exhibit 14) and the videotape (State's Exhibit 13) were played for the jury.
 {¶ 18} We conclude the jury was an actual witness to the controlled drug buy via the audio and video tapes. Therefore, the credibility of the confidential informant was not in issue.
 {¶ 19} Upon review, we conclude sufficient evidence was presented to support the guilty finding, and we find no manifest miscarriage of justice.
 {¶ 20} Assignment of Error I is denied.
 II {¶ 21} Appellant claims the trial court erred in denying his motion to suppress. We disagree.
 {¶ 22} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v.Fanning (1982), 1 Ohio St.3d 19; State v. Klein (1991),73 Ohio App.3d 485; State v. Guysinger *Page 6 
(1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93; State v.Claytor (1993), 85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, 1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 23} In Terry v. Ohio (1968), 392 U.S. 1, 22, the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus. *Page 7 
 {¶ 24} Appellant argues the evidence is insufficient to support a finding of reasonable and articulable suspicion of criminal activity. Appellant bases this argument on the lack of credibility of the confidential informant and the fact that he had a valid driver's license at the time of the stop.
 {¶ 25} During the suppression hearing, the trial court denied appellant's motion to suppress, finding the information supplied by Ms. Williams to the police was sufficient to establish "there were additional drugs in the vehicle," and the information supplied to Lieutenant Hilles as to appellant's driver's license status via a LEADS check was sufficient to justify the stop. February 28, 2006 T. at 100.
 {¶ 26} Alliance Police Patrolman Bob Rajcan was instructed to stop appellant's vehicle because appellant had "two prior suspensions and an active warrant out of Stark County. Id. at 22. At the time of the stop, appellant was unable to provide proof of insurance. Id. at 25. A K-9 unit arrived as backup and the K-9 partner indicated two positive alerts, one to the driver's side rear door and one to the vehicle's trunk. Id. at 32, 35.
 {¶ 27} Ms. Williams told police officers during the controlled buy, she observed three to four baggies of cocaine in the trunk of appellant's vehicle. Id. at 54. Lieutenant Hilles checked with dispatch and was informed appellant's driver's license was under two active suspensions (a license forfeiture suspension for failing to pay fines on a speeding ticket from May 23, 2005 to an indefinite end date, and a financial responsibility suspension for cancellation of his insurance policy on August 8, 2005). Id. at 55. The LEADS printout and outstanding warrant for appellant which Lieutenant Hilles had relied upon on August 30, 2005 to stop appellant was marked as State's *Page 8 
Exhibit 3. Id. at 56. LEADS is the Law Enforcement Automated Data System. Id. at 58. "[I]t's, ah, secure server that contains all BMV, um, records, of drivers and their driving status. Also contains information on wanted persons, protection orders, things of that matter." Id. A LEADS printout done the day before the suppression hearing indicated the license forfeiture suspension was released on September 2, 2005, and he was in compliance with the financial responsibility requirement on October 5, 2005. Id. at 62.
 {¶ 28} Although the suspensions were released, the release dates were after the date of the stop. Lieutenant Hilles's sole information on the suspensions was the information supplied by the LEADS printout. We find there were sufficient articulable facts supported by the official LEADS printout to establish probable cause for a Terry stop.
 {¶ 29} Upon review, we find the trial court did not err in denying appellant's motion to suppress.
 {¶ 30} Assignment of Error II is denied.
 III {¶ 31} Appellant claims the trial court erred in refusing to allow the use of a felony conviction to impeach a witness. We disagree.
 {¶ 32} The admission or exclusion of evidence lies in the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217. *Page 9 
 {¶ 33} Evid.R. 609 governs impeachment of evidence by conviction of crime. Subsection (A) states the following:
 {¶ 34} "For the purpose of attacking the credibility of a witness:
 {¶ 35} "(1) subject to Evid. R. 403, evidence that a witness other than the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the witness was convicted.
 {¶ 36} "(2) notwithstanding Evid. R. 403(A), but subject to Evid. R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
 {¶ 37} "(3) notwithstanding Evid. R. 403(A), but subject to Evid. R. 403(B), evidence that any witness, including an accused, has been convicted of a crime is admissible if the crime involved dishonesty or false statement, regardless of the punishment and whether based upon state or federal statute or local ordinance."
 {¶ 38} Appellant sought to use the confidential informant's criminal record to impeach her. Impeachment is used to challenge the sworn testimony of a witness. Ms. Williams did not testify during the trial and was not a sworn witness. The purpose of Evid.R. 609 is to permit impeachment of a witness. Ms. Williams was not a witness and therefore the rule does not apply sub judice. *Page 10 
 {¶ 39} Upon review, we find the trial court did not err in refusing to allow the use of a felony conviction to impeach the confidential informant.
 {¶ 40} Assignment of Error III is denied.
 IV {¶ 41} Appellant claims he was denied due process because of prosecutorial misconduct. We disagree.
 {¶ 42} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160, certiorari denied (1990), 112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. Darden v. Wainwright (1986), 477 U.S. 168.
 {¶ 43} Appellant argues the following statements made by the prosecutor during closing argument constitute error because the location of the drug buy was not in evidence:
 {¶ 44} "Abuse of trust. Trust of a coach. Abuse of a position of authority. Of coach. Using the Little Aviators football practice and fields and the events taking place there. So that this man, Travon Baker, could profit from illegal drug sales. That is what this case is about." T. at 572.
 {¶ 45} After defense counsel objected, the trial court overruled the objection, but reminded the jury "the statements of counsel are not evidence." T. at 573. *Page 11 
 {¶ 46} The prosecutor then claimed the drug buy occurred "in the vicinity of a juvenile." T. at 575. This was a statement of what the jurors themselves could see on the videotape of the transaction (State's Exhibit 13).
 {¶ 47} Lastly, appellant complains the prosecution using the term "good police work" which was a comment on the quality of the evidence:
 {¶ 48} "The truth runs in a straight line. The truth ran in a straight line in this case. Those facts I've just related to you, the facts you spent yesterday listening to with the officers, the whole operation, good police work, done according to protocol, and it ran a straight line." T. at 583.
 {¶ 49} No objection was made to the complained of statement. We find in taking the statement as a whole, it was not a comment on the quality of the evidence, but on the evidence of following police protocol.
 {¶ 50} Upon review, we do not find any prosecutorial misconduct in the complained of statements.
 {¶ 51} Assignment of Error IV is denied.
 V {¶ 52} Appellant claims the trial court erred in sentencing him in violation of the guidelines of State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856. Appellant also claims the trial court erred in increasing the sentence to eight years from the original four year sentence offered as a plea bargain.
 {¶ 53} The state concedes appellant's argument as to Foster.
Appellee's Brief at 28-29. Appellant was sentenced on March 2, 2006 andFoster was decided on February 27, 2006. The trial court acknowledged the Foster ruling, noting trial courts *Page 12 
did not have to make certain findings anymore, but stated "I don't think that precludes a Court from making findings." T. at 647. The state asked the trial court to use the pre-Foster factors solely as a guideline and requested the maximum sentence (eight years). T. at 640-641; R.C.2929.14(A)(2). Defense counsel argued the state had offered four years as a plea bargain and "I can't imagine why he would go from four years to seeking a maximum penalty of eight. Ah, I know it's not pride. And it shouldn't be vengeance. But that's a whopping jump from four to eight." T. at 644. Defense counsel requested a sentence of not more than four years. Id.
 {¶ 54} Admittedly, the trial court used the pre-Foster factors in explaining the sentence:
 {¶ 55} "So, I'm making the finding that because of that, even though the Supreme Court might say that I don't have to do it anymore, that that is the worse form of the offense, using them as cover. And it was just part of your routine.
 {¶ 56} "And because of that, I'm also making the finding I find that you serve the greatest likelihood of committing future crimes. The way that I watched you, and then after it was done, you went down there and you were interested in making sure that your poncho fit right and your fellow coaches were helping you with that. I really couldn't believe it. That also shows that you have the greatest likelihood of committing future crimes, together with the fact that you pled guilty in December of 2002, were placed on community control in February of 03, and then you're right back at it as soon as you get off probation. So I find that you're absolutely the poster child for why there should be a maximum sentence in this case." T. at 651-652. *Page 13 
 {¶ 57} Although the trial court alluded to the unconstitutionally of the pre-Foster factors, it nonetheless made the findings. The matter is remanded for re-sentencing pursuant to Foster.
 {¶ 58} Assignment of Error V is granted.
 {¶ 59} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed in part. The sentence is vacated and the matter is remanded to the trial court for re-sentencing pursuant toFoster.
Farmer, J. and Edwards, J. concur.
 Hoffman, P.J. concurs separately. *Page 14